UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| GREAT LAKES INSURANCE, S.E., §<br>　　*Plaintiff* §<br>§<br>vs. §<br>§<br>PRESTIGE WORLDWIDE PENSACOLA §<br>CHARTERS LLC d/b/a LEGAL LIMITS §<br>OUTDOORS and MARINA §<br>MANAGEMENT CORP., §<br>　　*Defendants* | Civil Action No. _____ |

## PLAINTIFF'S ORIGINAL COMPLAINT AND
## REQUEST FOR DECLARATORY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiff, GREAT LAKES INSURANCE, S.E. ("Great Lakes"), and files this Original Complaint and Request for Declaratory Judgment against Defendants, PRESTIGE WORLDWIDE PENSACOLA CHARTERS LLC d/b/a LEGAL LIMITS OUTDOORS ("Prestige" or the "Assured") and MARINA MANAGEMENT CORP. ("Marina Management"), contending that there is no coverage under Policy Number CSRYP/184311 (the "Policy") issued by Great Lakes to Prestige for the Scheduled Vessel, Legal Limits, a 2014 300' Boston Whaler with Mercury triple 34 hp gas engine, BWCE1025B414 (the "Scheduled Vessel"), which allegedly suffered loss during Hurricane Sally, and to Marina Management as an Additional Assured as set forth more fully below.

### I. PARTIES

1.　Great Lakes Insurance, S.E. is a Societas Europea incorporated in Germany and registered with commercial register of the local court of Munich under No. HRB230378, with a registered office at Koniginstra BE107, 80802 Munich, Germany.

2. Prestige Worldwide Pensacola Charters LLC d/b/a Legal Limits Outdoors is a limited liability company based in Pensacola, Florida. This limited liability company is owned by three separate limited liability companies. The first limited liability company is Max Jake, LLC, whose sole member is Benjamin Etscheid of Gulf Breeze, Florida. The second limited liability company is JBCW, PLLC, whose sole member is Justin Witkin of Pensacola, Florida. The third limited liability company is Aylstock, PLLC, whose sole member is Bryan Aylstock, of Gulf Breeze, Florida. All of these limited liability companies that own Prestige are in the Pensacola Division of the Northern District of Florida. Further, the Policy insured a Scheduled Vessel that was moored in Pensacola, Florida, at the time Hurricane Sally struck.

3. Marina Management Corp. is a Florida Profit Corporation with its principal place of business in Pensacola, Florida.

## II.  JURISDICTION AND VENUE

4. This Court has jurisdiction of this dispute pursuant to 28 U.S.C. § 1333. This is a declaratory judgment action requiring interpretation of a marine insurance policy. Thus, this case is a civil case involving admiralty and maritime jurisdiction, conferring original jurisdiction on this Court.

5. Venue is proper in the Northern District of Florida. As noted in the above section, Prestige is a Florida limited liability company, based in the Northern District of Florida, and each of its members resides in the Northern District of Florida. Marina Management Corp. is a Florida Profit Corporation with its principal place of business in the Northern District of Florida. Further, the Policy at issue insured a Scheduled Vessel which was moored in Pensacola, Florida, at the time Hurricane Sally struck. This proceeding is to interpret a maritime insurance policy with each of

the Defendants considered to have residence in the Northern District of Florida—Pensacola Division. Thus, venue is proper in this Court.

### III.  DECLARATORY JUDGMENT RELIEF SOUGHT

6. Pursuant to 28 U.S.C. § 2201, *et. seq.*, this proceeding represents a case of actual controversy involving the interpretation of a marine insurance policy. This proceeding will require that this Court declare the rights of the parties to this marine insurance contract and determine whether there is insurance coverage for Prestige for the damage to the Scheduled Vessel under the Policy and whether there is insurance coverage for Marina Management as an Additional Assured under the Policy.

### IV.  THE SUBJECT INSURANCE POLICY

7. Great Lakes issued a marine insurance policy to its Assured, Prestige, with a period of cover from August 7, 2020, to August 7, 2021, which was a renewal of a period of cover from August 6, 2019, to August 6, 2020 (the "Policy"). The Policy was subject to its insuring terms and conditions, provisions, limitations, warranties, endorsements, definitions, deductibles, and exclusions. The Policy contained Hull limits of US $325,000 on the Scheduled Vessel, subject to a regular deductible of US $6,500 and a Named Windstorm Deductible of US $16,250.

8. The Policy was a Premier Private and Pleasure Yacht Insuring Agreement which contained important provisions as follows:

> **2.  INSURING AGREEMENT**
>
> This is a legally binding insurance contract between you and us, ***incorporating in full the application form signed by you***. We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions, conditions and warranties of this insuring agreement. In the event of loss and damage to the Scheduled Vessel covered herein, cost of repairs to be paid without depreciation, new for old, except with regard to sails and covers of canvas or other like materials.

3

\* \* \*

### 3. Coverage A, Hull Machinery, Equipment and Dinghy

If a sum insured is shown for Section A of the insuring agreement declaration page, we provide coverage for accidental physical loss of or damage to the Scheduled Vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declaration page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions.

\* \* \*

### 10. General Conditions & Warranties

\* \* \*

c. ***This insuring agreement incorporates in full your application for insurance*** and together with any endorsements issued herein, constitutes the entire contract between us. At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement.

\* \* \*

m. This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

\* \* \*

t. Where any term herein is referred to as a "warranty" or where any reference is made herein to the word "warranted", the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception.

\* \* \*

### 11. Service Of Suit, Choice of Law and Forum

**It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no**

**such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.**

It is also hereby agreed that any dispute arising hereunder shall be subject to the exclusive jurisdiction of the Federal courts of the United States of America, in particular, the Federal District court within which you the Assured resides or the Federal District court within which your insurance agent resides.

It is further agreed that:

    a.    the Assured may serve process upon any senior partner in the firm of:

        Mendes & Mount, LLP
        750 7th Avenue
        New York, NY 10019

and that in any suit against any one of them upon this contract the Underwriters will abide by the final decision of the Court or any Appellate Court in the event of an appeal.

    9.    As part of the application for the original issuance of the Policy, the Assured was required to complete a Hurricane Questionnaire/Plan ("HPP"). This HPP was also part of the Renewal Questionnaire for the second year of coverage. It was unchanged from the first issuance of the Policy. It reads as follows:

    2.  In the event of a storm warning will the vessel be:

        a.)    Afloat    **b)    Ashore**

        \* \* \*

    4.  Please provide full details of your plan for protecting the vessel in the event of a storm warning, for example the use of lines/ropes . . .

        **See attached.**

        \* \* \*

    5.  Please supply details of your back-up plan (in the event you are prevented from implementing your initial plan).

        **See attached.**

* * *

**Hurricane Plan A:**

**In the event of a tropical storm or hurricane <u>*the vessel will be stored ashore*</u> at the Pensacola shipyard or Bahia Mar Marina and prepped for the storm.  The vessel will be on the list to be pulled 48 hours before the storm approaches land.**

**Hurricane Plan B:**

**In the event that the vessel is unable to be stored ashore in the marinas above in Plan A <u>*the vessel will be driven a safe distance away and stored at a marina or the vessel will be taken to Bon Secour*</u> and anchored in a safe location with multiple anchors along with being tied up to pilings to ride out the storm.**

10.     The HPP was a warranty incorporated into the application which was considered part of the initial Policy issuance.  Upon renewal of the Policy, the coverage terms did not change, and more importantly, the HPP remained a part of the Policy as stated above, and was also still considered part of the application, which was part of the Policy.

### IV.  HURRICANE SALLY AND THE PURPORTED LOSS

11.     Hurricane Sally struck the Gulf Shores, Alabama, and Pensacola, Florida areas on or about September 16, 2020.  Despite the language of the HPP requiring that the Scheduled Vessel be **<u>ashore</u>**, and specifically, that the Scheduled Vessel **be stored ashore at the Pensacola shipyard or Bahia Mar Marina**, that the Vessel be on the list to be pulled 48 hours before the storm approaches land, <u>or</u> if the Vessel is unable to be stored ashore in the marinas described, **the Vessel will be driven a safe distance away and stored at a marina or the Vessel will be taken to Bon Secour** and anchored in a safe location with multiple anchors along with being tied up to pilings to ride out the storm, none of this was done before Hurricane Sally struck.  Instead, the Scheduled Vessel was left at peril in the water at its home port of Palafox Pier Yacht Harbor

6

Marina. This was in breach of the HPP. This breach of warranty means this Court must declare the Policy void at inception.

## V.  ADDITIONAL ASSURED

12. Marina Management was an Additional Assured under the Policy. The Marina Additional Assured Endorsement reads as follows:

### Marina Additional Assured Endorsement

Notwithstanding the fact that such parties as advised are hereby named in their capacity as Additional Assured under this Policy, this cover will only extend insofar as they may be found liable to pay first insurance for liabilities which are properly the responsibility of the original Assured, and nothing herein contained shall be construed as extending cover in respect of any amount which would not have been recoverable hereunder by the original Assured had such claim been made or enforced against him.  Once indemnification hereunder has been made there shall be no further liability hereunder to make any further payment to any person or company whatsoever, including the Assured, in respect of that claim.

All rights granted to us together with all duties of an Assured under the original insuring agreement shall also apply to any other named Additional Assured jointly.

Nothing in this agreement shall be construed as extending coverage to indemnify the Additional Assured for their own negligent act, omission or those of their employees, servants, agents or sub-contractors whether they be deemed independent or otherwise that would be their own legal liability.  Nor shall this clause be construed as a waiver of any rights of subrogation of the original Assured against the named Additional Assured for damages caused by the Additional Assured's negligent act or omission or breach of contractual obligations or as may be granted at law.

In consideration of this the Additional Assured hereby waives any exculpatory language term or condition set out within any agreement that exists or may exist between the original Assured and themselves whether such language, term or condition seeks to limit the liability or otherwise of the Additional Assured to the original Assured.

**ALL OTHER TERMS, CLAUSES AND CONDITIONS REMAIN UNALTERED.**

13. This endorsement limits coverages for the Additional Assured to liabilities the Additional Assured is required to pay because of the responsibility of the named Assured

7

(Prestige).  It specifically <u>excludes</u> coverage for any negligence on the part of Marina Management or any of its employees, servants, agents, or sub-contractors.

14. At this juncture, the Marina Management has made unsubstantiated allegations that its dock was damaged by the Assured's Scheduled Vessel, apparently by physical contact against the docks during Hurricane Sally.  Marina Management seemingly suggests that it can recover from Great Lakes for these alleged damages, much like first party Hull coverage.  However, the Policy provides no first party dock coverage for Marina Management.  The policy only provides first party Hull coverage for damage to the Legal Limits, subject to the insuring terms and conditions, provisions, limitations, warranties, endorsements, definitions, deductibles, and exclusions.

15. As noted above, however, Prestige breached the HPP, which was a breach of a warranty, and such breach voids any Policy coverages.

16. Further, Marina Management also appears to be claiming coverage as a result of the indemnification and insurance provisions in the Moorage Sub-Lease Agreement (the "Agreement") between Marina Management and the Assured.  Such indemnification language reads as follows:

> **16. INDEMNIFICATION AND INSURANCE**.  Tenant shall defend and fully indemnify Landlord and hold it harmless from and against any and all liability and damages, costs or expenses, including attorneys' fees, ***arising from any breach hereof or any act, omission or negligence of Tenant or its officers, contractors, licensees, agents, servants, employees, guests, family members, invitees or visitors*** in or about the Boat, the Slip and/or the Marina or adjacent property that is owned by the Landlord, including, but not limited to:  personal injury or wrongful death or any environmental damage or environmental contamination or any damage or loss to any of the structures, docks, gangways, fences, doors, locks or other parts of the Marina, or to the property of any other tenants or users of the Marina, or guests thereof including damage to Landlord's property and the Landlord's structures, doors, piers, or other improvements occasioned by Tenant's boat or other property ***including such damages caused by Tenants boat or property during any storm or act of God***.  Landlord and its agents and employees shall not be liable to Tenant or

8

any other party for any damages, loss of property, theft, personal injury or death which occurs on the Boat, the Ship, the Marina, or in the buildings, parking lots or other part of the real property or Marina owned or operated by Landlord.

TENANT SHALL THROUGHOUT THE TERM OF THIS SUBLEASE AND ANY RENEWAL THEREOF AT ITS OWN EXPENSE. KEEP AND MAINTAIN IN FULL FORCE AND EFFECT:

A. PROTECTION AND INDEMNITY INSURANCE INSURING AGAINST CLAIMS OF BODILY INJURY, DEATH, PROPERTY DAMAGE, INCLUDING DAMAGE TO LANDLORD'S PROPERTY AND THE LANDLORD'S STRUCTURES, DOCKS, PIERS, OR OTHER IMPROVEMENTS OCCASIONED BY TENANT'S BOAT OR OTHER PROPERTY INCLUDING SUCH DAMAGES CAUSED BY TENANT'S BOAT OR PROPERTY DURING ANY STORM OR ACT OF GOD OR OTHER LOSS IN A COVERAGE AMOUNT OF NOT LESS THAN $300,000.

B. HULL INSURANCE ***COVERING THE BOAT*** FOR ITS FULL INSURABLE VALUE. ALL INSURANCE POLICIES REQUIRED UNDER THIS **SECTION 16** SHALL BE WITH COMPANIES AUTHORIZED TO DO BUSINESS IN FLORIDA AND REASONABLY APPROVED BY LANDLORD.

C. ***EACH POLICY OR BOND SHALL LIST LANDLORD AS ADDITIONAL INSURED*** AND PROVIDE THAT IT IS NOT SUBJECT TO CANCELLATION OR REDUCTION IN COVERAGE EXCEPT AFTER THIRTY (30) DAYS FOLLOWING WRITTEN NOTICE TO LANDLORD. TENANT SHALL DELIVER TO LANDLORD PRIOR TO THE DATE OF COMMENCEMENT OF THIS SUBLEASE AND FROM TIME TO TIME THEREAFTER UPON DEMAND FROM LANDLORD, CERTIFICATES EVIDENCING THE EXISTENCE OF INSURANCE AND BOND IN COMPLIANCE WITH THIS **SECTION 16**.

D. ***TENANT SHALL PROVIDE A TROPICAL STORM AND HURRICANE PREPAREDNESS PLAN*** WHICH SHALL BECOME **EXHIBIT B** AND IS ATTACHED AS PART OF THIS SUBLEASE. FAILURE TO DO SO CONSTITUTES A DEFAULT UNDER THIS SUBLEASE. (emphasis added).

17. As noted, and importantly, the Assured is not obligated to indemnify Marina Management against any loss or damage to Marina Management. Instead, such indemnification

is limited to breach of the agreement; negligence of Prestige; and potential damages caused by the Legal Limits during any storm or act of God. Such has not been alleged at this juncture.

18. Regardless, such indemnification is not covered under the Policy. The Third Party Liability section of the Policy reads as follows:

### 4. Coverage B. Third Party Liability

If a sum insured is shown under Section B of the insuring agreement declaration page, we provide coverage for any sum or sums which you or any other covered person become legally liable to pay and shall pay *as a result of ownership or operation of Scheduled Vessel.* (Emphasis added).

**Exclusions to Coverage B**

Unless specifically agreed by us in writing and an additional premium paid, Liability cover is not provided for:

c. Liability assumed by you under any contract or agreement.

19. The putative liability that Marina Management appears to be asserting is alleged liability assumed by the Assured under a contract or agreement, and as such, is excluded under the Policy. Further, again noting that the Assured failed to comply with the HPP, such is not only a breach of the Policy. At bottom, there is no coverage for Marina Management under the Policy because as stated earlier, such breach by the Assured is a breach of a warranty, which is a breach of the Policy, voiding all coverages.

## VI. RELIEF REQUESTED

20. As noted, warranties in the Policy were breached by the Assured. These breaches were material. Such breaches resulted in damage to the Scheduled Vessel because the HPP was not complied with as warranted in the application, which was part of the Policy. The Scheduled Vessel was not stored **ashore** at the time of Hurricane Sally. Further, the Scheduled Vessel was not driven a safe distance and stored at a marina or taken to Bon Secour. Instead, the Assured left

10

the Vessel at its home port in violation of the HPP.  Further, the Assured may not credibly claim that the Scheduled Vessel was on the list to be pulled 48 hours before Hurricane Sally approached the Gulf Shores, Alabama, and Pensacola, Florida areas, nor was the Vessel driven a safe distance away and stored at a marina or taken to Bon Secour and properly anchored.  Instead, the Scheduled Vessel was not on the list to be pulled out of the water at the Palafox Pier Yacht Harbor Marina 48 hours before Hurricane Sally struck, nor was it driven a safe distance away or property anchored at Bon Secour.  These breaches by the Assured obviate coverage, and this Court should declare the Policy to be void at inception.

21.     Maritime choice of law rules provide that general maritime law should apply, as well entrenched federal maritime law, but if not, New York law should apply as decreed in the Policy.  This Circuit has determined that marine insurance policies such as the subject Policy are governed by maritime law, and has further agreed that strict construction of express warranties in maritime insurance contracts is to take place in the interpretation of such contracts.

22.     Under either the general maritime law or New York law, the breach of a warranty does not have to be material to the Assured's risk to declare the Policy void from inception.  Instead, any breach of warranty will void the coverage.  Nevertheless, the breach of the warranty in the Policy by this Assured was material.  If the Scheduled Vessel had been <u>ashore</u> as required, or at least moved to Bon Secour and properly anchored as alternatively required, no damage would have occurred.  Accordingly, this Court should declare the Policy to be void from inception since the warranty, namely the HPP, was clearly breached.

23.     As for any claims to coverage by the Additional Assured, there is no provision of first party coverage for the Additional Assured under the Policy, and thus, there could be no claim of first party coverage by the Additional Assured.  This Court should so decree and declare.

24.   Finally, any claim by the Additional Assured for indemnity is excluded by the Policy language itself, because "Liability cover is not provided for…liability assumed by you under any contract or agreement."

* * *

This Court should declare that the indemnification provision in the Agreement cannot lead to any coverage under the Policy for Marina Management because of the strict wording of the exclusion.

### VII.  CONCLUSION AND PRAYER

25.   Plaintiff, GREAT LAKES INSURANCE, S.E., requests this Court declare the subject insurance policy was void at inception because of breaches of warranties by the Assured, PRESTIGE WORLDWIDE PENSACOLA CHARTERS, LLC d/b/a LEGAL LIMITS OUTDOOR.  This Court should declare that there is no coverage under the subject insurance policy for any losses reported as to the Scheduled Vessel, the Legal Limits, under the Policy.

26.   Further, this Court should declare that the Additional Assured, MARINA MANAGEMENT CORP., has no first party coverages under this Policy, and that the indemnification in the Moorage Sub-Lease Agreement is excluded under the Policy.  Further, on information and belief, there has been no claim or lawsuit brought against Marina Management because of the alleged and sole negligence of Prestige.  As such, this Court should declare there is no coverage for Marina Management under the Policy.

Dated:  November 23, 2020.

Respectfully submitted,

LUGENBUHL, WHEATON, PECK, RANKIN &
    HUBBARD, A LAW CORPORATION


By:    */s/ Todd G. Crawford*
      Todd G. Crawford (MBN 102620)
      LUGENBUHL, WHEATON, PECK,
      RANKIN & HUBBARD
      2501 14th Street, Suite 202
      Gulfport, Mississippi 39501
      Telephone: (228) 206-0033
      E-Mail: tcrawford@lawla.com
      *Attorneys for Plaintiff*