UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| GREAT LAKES INSURANCE, S.E., | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| vs. | § | Civil Action No. 3:20-05954-RV-HTC |
| | § | |
| PRESTIGE WORLDWIDE | § | |
| PENSACOLA CHARTERS LLC | § | |
| d/b/a LEGAL LIMTS OUTDOORS, | § | |
| | § | |
| *Defendant* | § | |

---

**GREAT LAKES INSURANCE, S.E.'S
MEMORANDUM OF AUTHORITIES IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

---

## TABLE OF CONTENTS

**MEMORANDUM OF AUTHORITIES** ............................................................1

STATEMENT OF FACTS ....................................................................1

SUMMARY OF ARGUMENTS .............................................................5

SUMMARY JUDGMENT STANDARD ..................................................6

SUMMARY JUDGMENT EVIDENCE...................................................8

NEW YORK LAW APPLIES ................................................................9

ARGUMENTS .....................................................................................12

    Under New York Law, Breach of Warranties In Insurance
     Policies Vitiate Coverage ............................................................12

    The Hurricane Plan Here Was A Warranty That Was
     Breached .....................................................................................18

    No Breach of Contract or Bad Faith Exists.......................................24

CONCLUSION.....................................................................................25

**CERTIFICATE OF COMPLIANCE** ...............................................27

**CERTIFICATE OF SERVICE** .......................................................27

**EXHIBIT A**
    Deposition Testimony of Captain Lance Powers

**EXHIBIT B**
    Deposition Testimony of Tammy Blackwell

**EXHIBIT C**
    Prestige's Responses to Plaintiff's Interrogatories

**EXHIBIT D**
    Declaration of Beric Anthony Usher

**EXHIBIT E**
    Weather Data/Advisories from the National Hurricane Center

## TABLE OF AUTHORITIES

### Cases

*316, Inc. v. Maryland Casualty Company*, 625 F. Supp. 1187 (N.D. Fla. 2008)....25

*Aguirre v. Citizens Casualty Company of New York*, 441 F.2d 141, 143 (5th Cir. 1971) ...............................................................................................................15

*Albany Ins. Co. v. Kieu*, 927 F.2d 882, 890 (5th Cir. 1991) ....................................11

*All Underwriters v. Weisburg*, 222 F. 3d 1309 (11th Cir. 2000)..............................10

*Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) ...............................8

*Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1263-64 (11th Cir. 2010) ..................................................................................................................................7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)......................................6

*AXA Global Risks (UK), Ltd. v. Webb*, 2000 WL 33179617 (M.D. Fla., July 28, 2000) ..................................................................................................... 6, 13, 17

*Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) ........................15

*Canton Ins. Office v. Independent Transportation Co.*, 217 F. 213, 217 (9th Cir. 1914) ...............................................................................................................15

*Capital Coastal Corp. v. Hartford Fire Ins. Co.*, 378 F. Supp. 163, 172 (E.D. Va. 1974) ...............................................................................................................15

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991) ............................12

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)..................................................7

*Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) .................................................................................................................7

*Clark v. Coates Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991) .....................................7

*Cogswell v. Chubb*, 36 N.Y.S. 1076, 1077 (1st Dept. 1896)....................................13

*Commercial Union Insurance v. Flagship Marine Services, Inc.*, 190 F.3d 26, 31-33 (2d Cir. 1999)................................................................................. 13, 14, 17

*Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1161 (11th Cir. 2009) ................10

*Cunningham v. Insurance Co. of North America, et al*, 521 F.2d 166, 170 (E.D.N.Y. 2006)........................................................................................ 13, 16

*Gamez v. Ace American Ins. Co.*, 638 Fed. App'x 850, 855 (11th Cir. 2016).........17

*Gfroerer v. Ace American Ins. Co.*, 2004 WL 2966173, at *4-*5 (W.D.N.Y. 2004) .................................................................................................................. 13, 16

*Great Lakes Insurance, S.E. v. Wave Cruiser, LLC*, 2020 WL 7135586 (S.D. Fla., Nov. 2, 2020) .................................................................................................8, 9

*Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009)...................................................................................... 9, 11, 12

*Great Lakes Reinsurance (UK) PLC v. Rosin*, 757 F. Supp. 2d 1244, 1250-51 (S.D. Fla. 2010) ............................................................................................... passim

*Great Lakes Reinsurance (UK) PLC v. S. Marine Concepts, Inc.*, 2008 WL 6523861, at *2 (S.D. Tex. 2008) ........................................................9

*Gulf Tampa Dry Dock Company v. Great Atlantic Company*, 757 F.2d 1172, 1174 (11th Cir. 1985)....................................................................10

*Hilton Oil Transport v. Jonas*, 75 F.3d 627, 630 (11th Cir. 1996)..........................13

*Home Insurance Co. v. Ciconett*, 179 F.2d 892, 894 (6th Cir. 1950)......................15

*In Re Balfour MacLaine International Limited*, 85 F.3d 68, 80-81 (2d Cir. 1996) 14

*Insurance Company of North America v. Zaglool*, 526 F. Supp. 2d 361, 367-68 (E.D.N.Y. 2007)................................................................. 13, 16

*Jarvis Towing and Transportation Corp. v. Aetna Ins. Co.*, 82 N.E. 2d 577 (1948) ..................................................................................................17

*Kephart v. Certain Underwriters at Lloyds of London*, 427 F. Supp. 3d 508, 512 (S.D.N.Y. 2019) ........................................................... passim

*Lamar v. Wells Fargo Bank*, 597 Fed. App'x 555, 556-57 (11th Cir. 2014) ............7

*Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1366-67 (11th Cir. 1988) 13, 15

*New Hampshire Insurance Company v. Dagnone*, 394 F. Supp. 2d 480 (D.R.I., 2005) ........................................................................... 9, 13, 17

*O'Connor Transportation Company v. Glens Falls Insurance Company*, 189 N.Y.S. 612, 614 (4th Dept. 1921)....................................................14

*Pozzi Window Co. v. Auto-Owners Ins.*, 446 F.3d 1178, 1179 (11th Cir. 2006)......25

*Ridinger v. Dow Jones & Co., Inc.*, 651 F.3d 309 (2d Cir. 2011))...........................8

*St. Paul Fire & Marine Insurance Company v. Lago Canyon, Inc.*, 561 F.3d 1181, 1184 (11th Cir. 2009)..............................................................10

*Travelers Property Casualty Company of America v. Ocean Reef Charters, LLC*, No. 19-13690 (11th Cir., May 6, 2021) ....................................... 10, 11

*United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties*, 941 F.2d 1428 (11th Cir. 1991).........................................7, 8

*Williamson Oil Co. v. Phillip Morris USA*, 346 F.3d 1287 (11th Cir. 2003) ............6

*Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) .................................................7

## Rules

Fed. R. Civ. P. 56(a).................................................................................................1

Fed. R. Civ. P. 56(c).................................................................................................6

Local Rule 7.1(F) ...................................................................................................27

## Treatises

Restatement (Second) of Conflict of Laws § 187-188 ..........................................11

## <u>MEMORANDUM OF AUTHORITIES IN SUPPORT OF</u> <u>PLAINTIFF, GREAT LAKES INSURANCE, S.E.'S</u> <u>MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff, GREAT LAKES INSURANCE, S.E. ("Great Lakes"), files this Memorandum in Support of its Motion for Summary Judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, and submits that this Court should grant its summary judgment against Defendant, Prestige Worldwide Pensacola Charters LLC d/b/a Legal Limits Outdoors ("Prestige"), because Prestige failed to comply with the Hurricane Plan in the subject insurance policy, voiding any potential coverage for damage to the insured vessel from Hurricane Sally, as outlined below.

## I.
## STATEMENT OF FACTS

1.     This Court has admiralty jurisdiction over this matter since the dispute involves the interpretation of a marine insurance policy.

2.     Great Lakes issued a marine insurance policy to Prestige, Policy Number CSRYP/184311, with a period of cover from August 7, 2020, to August 7, 2021, which was a renewal of a period of cover from August 6, 2019, to August 6, 2020 (the "Policy"), on the scheduled vessel, M/V LEGAL LIMITS.  The Policy was subject to its insuring terms and conditions, provisions, limitations, warranties, endorsements, definitions, deductibles, and exclusions.  The Policy contained hull

limits of $325,000, subject to a regular deductible of U.S. $6,500 and a named

windstorm deductible of $16,250.

3.    The Policy was a Premier and Pleasure Yacht Insuring Agreement that

contained important provisions as follows:

### 2.    INSURING AGREEMENT

This is a legally binding insurance contract between you and us, ***incorporating in full the application form signed by you***.  We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due <u>and</u> compliance by covered persons with the *provisions, conditions and warranties of this insuring agreement*.

* * *

### 3.    Coverage A, Hull Machinery, Equipment and Dinghy

If a sum insured is shown for Section A of the insuring agreement declaration page, we provide coverage for accidental physical loss of or damage to the Scheduled Vessel which occurs during the period of this insuring agreement and within the limits set out  in the insuring agreement declaration page, *subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions*.

* * *

### 10.    General Conditions & Warranties

* * *

c.    ***This insuring agreement incorporates in full your application for insurance***

* * *

t.    Where any term herein is referred to as a "warranty" or where any reference is made herein to the word "warranted", the term shall be

deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception.

\* \* \*

4.     As part of the Application for the original issuance of the Policy, Prestige was required to complete a Hurricane Questionnaire/Plan (the "Hurricane Plan").  This Hurricane Plan was also part of the renewal questionnaire for the second year of coverage.  It was unchanged from the first issuance of the Policy.  It reads as follows:

2.  In the event of a storm warning will the vessel be:

a.)     Afloat          **b)     Ashore**

\* \* \*

4.  Please provide full details of your plan for protecting the vessel in the event of a storm warning, for example the use of lines/ropes . . .

**See attached.**

\* \* \*

5.  Please supply details of your back-up plan (in the event you are prevented from implementing your initial plan).

**See attached.**

\* \* \*

**Hurricane Plan A:**

**In the event of a tropical storm or hurricane _the vessel will be stored ashore at the Pensacola Shipyard_ or Bahia Mar Marina and prepped for the storm.  _The vessel will be on the list to be pulled 48 hours before the storm approaches land_.**

**Hurricane Plan B:**

**In the event that the vessel is unable to be stored ashore in the marinas above in Plan A _the vessel will be driven a safe distance away and stored at a marina or the vessel will be taken to Bon Secour_ and anchored in a safe location with multiple anchors along with being tied up to pilings to ride out the storm.**

5.      The Hurricane Plan was a warranty incorporated into the Application, which was considered part of the Policy.  Warranties require strict compliance. Therefore, in the event of a tropical storm or hurricane, Prestige was required to haul out and store the M/V LEGAL LIMITS _ashore_ at the Pensacola Shipyard or Bahia Mar Marina to satisfy Hurricane Plan A.  Otherwise, Prestige needed to comply with Hurricane Plan B.  It did neither.

6.      Hurricane Sally struck the Pensacola area in the early morning hours of September 16, 2020.

7.      The M/V LEGAL LIMITS was still docked at its regular leased location at the Palafox Pier and Marina.

8.      Prestige did not haul out the vessel and store it at the Pensacola Shipyard or the Bahia Mar Marina.  Nor did Prestige drive the vessel a safe distance

away and store it at a marina or take it to a safe location with multiple anchors.  In short, Prestige did not comply with the Hurricane Plan.

9.      Prestige contends it was either too late when it received notice of Hurricane Sally approaching the Pensacola area and/or it would have been unsafe to comply with the Hurricane Plan at that time.

10.     The M/V LEGAL LIMITS purportedly suffered damage close to the full hull limits of $325,000 less the named windstorm deductible.

## II.
## SUMMARY OF ARGUMENT

11.     Prestige failed to comply with the Hurricane Plan when Hurricane Sally struck the Pensacola area.  This failure is a breach of a warranty that vitiates insurance coverage as a matter of law.  New York law applies based on the choice of law provision in the Policy.

12.     This Court should declare the Policy void *ab initio* as a matter of law and grant summary judgment on behalf of Great Lakes.

13.     Great Lakes should also have summary judgment on the Counterclaim filed by Prestige for the same reasons outlined above.  Because the Policy is void *ab initio*, there can be no breach of contract as claimed by Prestige.  Further, there is no so-called bad faith.

### III.
### SUMMARY JUDGMENT STANDARD

14.     Summary judgment is authorized, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  See also, *AXA Global Risks (UK), Ltd. v. Webb*, 2000 WL 33179617 (M.D. Fla., July 28, 2000) and *Kephart v. Certain Underwriters at Lloyds of London*, 427 F. Supp. 3d 508, 512 (S.D.N.Y. 2019).

15.     Summary judgment is appropriate only in circumstances where, "the evidence is such that a reasonable jury could not return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, at 248; *AXA Global Risks (UK), Ltd. v. Webb*, at *2.  The burden of demonstrating the satisfaction of the motion for summary judgment standard lies with the movant who must present, "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" that establish the absence of any genuine, material factual dispute.  *Anderson v. Liberty Lobby*, at 248; *Williamson Oil Co. v. Phillip Morris USA*, 346 F.3d 1287 (11th Cir. 2003).  When there is no genuine issue of material fact that exists, then the moving party is entitled to judgment as a matter of law.  *Alvarez v. Royal Atlantic*

*Developers, Inc.*, 610 F.3d 1253, 1263-64 (11th Cir. 2010); *Lamar v. Wells Fargo Bank*, 597 Fed. App'x 555, 556-57 (11th Cir. 2014).

16.     The movant has the burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *Lamar v. Wells Fargo Bank*, at 557; *Clark v. Coates Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). When that burden has been met, the burden shifts to the non-movant to demonstrate that there is a genuine issue of material fact, which precludes summary judgment. *Clark v. Coates Clark*, at 608; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To do so, the non-moving party "may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." *Kephart v. Certain Underwriters*, at 514 (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The moving party must show that, on all the essential elements of its case in which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties*, 941 F.2d 1428 (11th Cir. 1991); see also, *Celotex Corp. v. Catrett*, at 331 and *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). "Conclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," *Kephart v. Certain Underwriters*, at 514

(quoting *Ridinger v. Dow Jones & Co., Inc.*, 651 F.3d 309 (2d Cir. 2011). A court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Great Lakes Insurance, S.E. v. Wave Cruiser, LLC*, 2020 WL 7135586 (S.D. Fla., Nov. 2, 2020) (quoting *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

17.   Because no reasonable jury could find that Prestige complied with the subject warranty, then Great Lakes, as the movant, has demonstrated and will further demonstrate that there is no genuine issue for trial, and that specifically, the pleadings, depositions, answers to interrogatories, and attached Declaration show that Great Lakes is entitled to summary judgment as a matter of law. *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties*, at 1438. The breach of warranty by Prestige vitiates coverage, and this Court should declare the Policy to be void *ab initio*.

## IV.
## SUMMARY JUDGMENT EVIDENCE

18.   The live pleading as to Great Lakes' Motion for Summary Judgment is Plaintiff's First Amended Complaint and Request for Declaratory Judgment. This pleading makes clear that the Hurricane Plan was a warranty that was part of the Application and part of the Policy.

19.     Additionally, Great Lakes attaches the following evidence in support of

its Motion for Summary Judgment:

| | |
|---|---|
| **Exhibit A** | Captain Joseph Lance Powers' Deposition Testimony; |
| **Exhibit B** | Tammy Blackwell's Deposition Testimony; |
| **Exhibit C** | Prestige's Responses to Great Lakes' Interrogatories; and |
| **Exhibit D** | Declaration of Beric Anthony Usher. |
| **Exhibit E** | Weather Data/Advisories from the National Hurricane Center. |

20.     There are no issues of fact  concerning Prestige's failure to comply with

the Hurricane Plan.

## V.
## NEW YORK LAW APPLIES

21.     The policy included a choice of law provision adopting United States

Federal Admiralty law and/or New York Law.  Other courts have upheld this choice

of law provision and applied New York Law.  *Great Lakes Reinsurance (UK) PLC*

*v. Rosin*, 757 F. Supp. 2d 1244, 1250-51 (S.D. Fla. 2010); *Great Lakes Reinsurance*

*(UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009); *Great Lakes*

*Insurance, S.E. v. Wave Cruiser, LLC*, 2020 WL 7135586 (S.D. Fla., Nov. 2, 2020)

at *8; *Kephart v. Certain Underwriters* 427 F. Supp. 508, 515 (S.D.N.Y. 2019); and

*New Hampshire Insurance Company v. Dagnone*, 394 F. Supp. 2d 480 (D.R.I.,

2005).  See also, *Great Lakes Reinsurance (UK) PLC v. S. Marine Concepts, Inc.*,

2008 WL 6523861, at *2 (S.D. Tex. 2008).

9

22.     The dispute in this case concerns a marine insurance policy issued for a vessel, which gives rise to federal admiralty jurisdiction. *Great Lakes Reinsurance (UK) PLC v. Rosin*, at 1250.  See also, *St. Paul Fire & Marine Insurance Company v. Lago Canyon, Inc.*, 561 F.3d 1181, 1184 (11th Cir. 2009); and *All Underwriters v. Weisburg*, 222 F. 3d 1309 (11th Cir. 2000).   This Court must make a legal interpretation with respect to a marine insurance policy.  *Great Lakes Reinsurance (UK) PLC v. Rosin*, at 1250; *Gulf Tampa Dry Dock Company v. Great Atlantic Company*, 757 F.2d 1172, 1174 (11th Cir. 1985).

23.     The choice of law clause in the Policy reads as follows:

**11.     Service Of Suit, Choice of Law and Forum**

**It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.**

It is also hereby agreed that any dispute arising hereunder shall be subject to the exclusive jurisdiction of the Federal courts of the United States of America, in particular, the Federal District court within which you the Assured resides or the Federal District court within which your insurance agent resides.

24.     When a federal district court sits in admiralty, . . . "federal maritime conflict of laws control." *Travelers Property Casualty Company of America v. Ocean Reef Charters, LLC*, No. 19-13690 (11th Cir., May 6, 2021); (quoting from *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1161 (11th Cir. 2009)).  See also,

10

*Great Lakes Reinsurance (UK) PLC v. Rosin*, at 1250; *Great Lakes Reinsurance (UK) PLC v. Durham Auctions*, 585 F.3d 236, 242 (5th Cir. 2009); and *Kephart v. Certain Underwriters*, 427 F. Supp. 3d 508, 512, 514 (S.D.N.Y. 2019).  "As Kieu states, 'the court in maritime cases <u>must</u> apply general federal maritime choice of law rules.'"  *Great Lakes Reinsurance (UK) PLC v. Durham Auctions*, at 241-42, quoting from *Albany Ins. Co. v. Kieu*, 927 F.2d 882, 890 (5th Cir. 1991).  Under the Restatement (Second) of Conflict of Laws § 187-188, "the law of the jurisdiction chosen by the parties will be applied to the issue in question if the parties could have resolved the issue by an explicit provision in their agreement directed to that issue."  *Great Lakes Reinsurance (UK) PLC v. Durham Auctions*, at 242.

25.     Since the 11th Circuit very recently held that not all insurance warranties are to be interpreted by "entrenched maritime rules," courts should look to the choice of law provision in the insurance contract.  *Travelers Property and Casualty Company of America v. Ocean Reef Charters, LLC*, at *17; *Great Lakes Reinsurance (UK) PLC v. Rosin*, at 1251, and *Great Lakes Reinsurance (UK) PLC v. Durham Auctions*, at 242.  Stated another way, a choice of law provision in a maritime contract will be upheld unless its enforcement would be unreasonable or unjust.  *Great Lakes Reinsurance (UK) PLC v. Rosin*, at 1215; *Great Lakes Reinsurance (UK) PLC v. Durham Auctions*, at 242.  New York law, as chosen by the parties in both *Great Lakes* cases cited above, was applied by the courts as to interpretation of

warranties.  New York law, as chosen by the parties here, should also apply as to the interpretation of the Hurricane Plan warranty in this case.

26.     As noted by the court in *Great Lakes Reinsurance (UK) PLC v. Durham Auctions*, Great Lakes maintains its trust accounts in New York, was approved as a surplus lines' insurer in the State of New York, and has its agent for service of process in New York, specifically, Mendes & Mount, LLP, 750 7th Avenue, New York, NY 10019.  In short, the choice of law of New York in the Policy is not unreasonable or unjust, and there is no reason for this Court to ignore the parties' choice of law.  Further, such choice of law clauses are not rendered unenforceable simply because one party claims it lacked sufficient bargaining power.  *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991)(the inclusion of a forum selection clause in a cruise line ticket does not render the clause unenforceable under admiralty law simply because the passenger lacked bargaining power); *Great Lakes Reinsurance (UK) PLC v. Rosin*, at 1252.  Simply put, the parties choice of law should be upheld and enforced, such that New York law should apply.

**VI.**
**ARGUMENTS**

**A.**   **Under New York Law, Breach of Warranties in Insurance Policies Vitiate Coverage.**

27.     While it may be possible that entrenched federal law would apply to the interpretation of warranties in this matter, as stated above, Great Lakes is

12

comfortable allowing the interpretation of New York law as required by case law. New York law has long provided that "the breach of an express warranty [in a maritime insurance policy], whether material to the risk or not, whether the loss happens through the breach or not, absolutely determines the policy and the assured forfeits his rights under it."  *Great Lakes Reinsurance (UK) PLC v. Rosin*, 757 F. Supp. 2d 1244, 1257 (S.D. Fla. 2010), quoting from *Cogswell v. Chubb*, 36 N.Y.S. 1076, 1077 (1st Dept. 1896) [navigation limit warranty], affirmed 53 NE 1124 (1899).  This includes the interpretation of "Tow" Limit Warranties, Navigation Limit Warranties, Named Operator Warranties, "Put Ashore" Warranties, "Lay Up" Warranties, and Unseaworthiness Warranties.[1]  All of these have been found by New York courts, or other courts generally applying New York law, to be sufficient to declare a marine insurance policy void *ab initio* when they are breached.  See, *Commercial Union Insurance v. Flagship Marine Services, Inc.*, 190 F.3d 26, 31-33 (2d Cir. 1999), where the court held that a warranty in a marine insurance contract must be strictly construed.

---

[1] *Commercial Union Insurance v. Flagship Marine Services, Inc.*, 190 F.3d 26, 31-33 (2d Cir. 1999) [Tow Limit Warranty]; *Lexington Ins. Co. v. Cooke's Seafood*, 835 F. 2d 1364, 1366-67 (11th Cir. 1988); and *Hilton Oil Transport v. Jonas*, 75 F.3d 627, 630 (11th Cir. 1996) [Navigation Limit Warranty]; *Great Lakes Reinsurance (UK) PLC v. Rosin*, 757 F. Supp. 1244, 1258 (S.D. Fla., 2010); *Insurance Company of North America v. Zaglool*, 526 F. Supp. 361, 367-68 (E.D.N.Y. 2007); and *Gfroerer v. Ace American Ins. Co.*, 2004 WL 2966173, at *4 and *5 (W.D.N.Y. 2004) [Named Operator Warranty]; *Cunningham v. Insurance Co. of North America, et al*, 521 F.2d 166, 170 (E.D.N.Y. 2006) and *New Hampshire Insurance Company v. Dagnone*, 394 F. Supp. 2d 480, 486 (D.R.I. 2005); and *AXA Global Risks (UK), Ltd. v. Webb*, 2000 WL 33179617 (M.D. Fla., July 28, 2000) [Put Ashore and Lay Up Warranties]; infra.

A "warranty" is a promise "by which the assured undertakes that some particular thing shall or shall not be done, or that some condition shall be fulfilled, for whereby he affirms or negates the existence of a particular state of facts . . ." [and]

"as a general matter, warranties represent a promise by the insured to do or not to do something that the insurer considers significant to its risk of liability under an insurance contract . . . under the federal rule and the law of most states, warranties in maritime insurance contracts must be strictly complied with, even if they are collateral to the primary risk that is the subject of the contract, if the insured is to recover . . . the rule of strict compliance with warranties in marine insurance contracts stems from the recognition that it is peculiarly difficult for marine insurers to assess their risk, such that insurers must rely on the representations and warranties made by insureds regarding their vessels' conditions and usage . . ." *Id,* internal citations omitted.

See also, *O'Connor Transportation Company v. Glens Falls Insurance Company,* 189 N.Y.S. 612, 614 (4th Dept. 1921) affirmed N.Y. 659, 135 N.E. 959 (1922); and *In Re Balfour MacLaine International Limited*, 85 F.3d 68, 80-81 (2d Cir. 1996).  In *Commercial Union Insurance v. Flagship Marine Services,* at 33, the Court found it was not necessary to determine whether New York or Florida law applied because a Tow Limit Warranty existed in the policy; it was breached, and it was material to the insurer's risk.

"We find that the tow endorsement is unambiguous and that it precludes coverage under either New York or Florida law for the accident that occurred in this case . . . there could be no doubt that this warranty was breached in this case and that it was material, because the length of vessels towed was correlated to the risk assumed by Commercial Union.  Therefore, under New York or Florida law, Flagship Marine's breach precludes its recovery under the insurance contract. *Id.*

28.     Florida law is consistent with New York law with respect to the strict interpretation of warranties in marine insurance contracts; a breach of a warranty vitiates coverage.  With respect to a navigational limit warranty, *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1366-67 (11th Cir. 1988), held that admiralty law would require the strict construction of express warranties in marine insurance contracts.  Therefore, a breach of the navigational warranty would enable the insurer to avoid the loss.  See also, *Aguirre v. Citizens Casualty Company of New York*, 441 F.2d 141, 143 (5th Cir. 1971), cert. den'd, 404 U.S. 829 (1971);[2]  Accord *Home Insurance Co. v. Ciconett*, 179 F.2d 892, 894 (6th Cir. 1950); *Canton Ins. Office v. Independent Transportation Co.*, 217 F. 213, 217 (9th Cir. 1914); and *Capital Coastal Corp. v. Hartford Fire Ins. Co.*, 378 F. Supp. 163, 172 (E.D. Va. 1974).

29.     Named operator warranties are treated similarly.  In *Great Lakes Reinsurance (UK) PLC v. Rosin*, 757 F. Supp. 2d 1244, 1258,  the court applied New York law because of the New York choice of law provision in the insurance policy, and found a breach of the named operator provision voids coverage even if the operation of the vessel did not cause or contribute to the accident:

> "Although a provision of New York's insurance law now provides that a breach of a warranty does not void coverage unless the breach increased the risk of loss, damage, or injury within the coverage of the policy, that provision does not apply to express or implied warranties

---

[2] The Eleventh Circuit in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) adopted as precedent decisions that the former Fifth Circuit rendered prior to October 1, 1981.

> in a contract of marine insurance relating to the perils and risks of navigation . . . Because [Paul Rosin] was not a 'named operator' or 'covered person' under Mr. Rosin's policy, there was a breach of an express warranty.  That breach, under New York law, voids coverage for the accident even if Paul's driving of the vessel did not cause or contribute to the accident."

See also, *Insurance Company of North America v. Zaglool*, 526 F. Supp. 2d 361, 367-68 (E.D.N.Y. 2007) (under New York law, breach of 'named operator' warranty precluded coverage as to the person who was operating the vessel and was injured in the accident.) *Gfroerer v. Ace American Ins. Co.*, 2004 WL 2966173, at *4-*5 (W.D.N.Y. 2004) (where dangerous vessel was being operated by a person other than named operator at time of accident, breach of 'named operator' warranty voided coverage for accident under New York law even though named operator was purportedly supervising the other person's driving of the vessel), aff'd 184 Fed. App'x 26, 2006 WL 1427730 (2d Cir. 2006). *Id.*

30.     "Put ashore" warranties and "lay up" warranties are treated similarly as well.  *Cunningham v. Insurance Co. of North America, et al*, 521 F.2d 166, 170 (E.D.N.Y. 2006), in interpreting a lay up warranty during a fire, held that breach of a "lay up" warranty in a marine insurance policy need not be material to void coverage.

> "Plaintiff was in breach of the lay up warranty at the time of the fire . . . plaintiff argues that even if he was in breach of warranty, his breach was not material to the loss of the boat.  New York courts, however, have long held that breaches in marine insurance contracts—even ones

> relating to lay up or docking requirements—need not be material in
> order for the insurer to disclaim coverage."

*Id.* See also, *Jarvis Towing and Transportation Corp. v. Aetna Ins. Co.*, 82 N.E. 2d

577 (1948); *Commercial Union Insurance v. Flagship Marine Services*, 190 F.3d

26, 32 (2d Cir. 1999)(holding a breach of warranty need not be material in order for

the insurer to disclaim coverage in a marine insurance contract), citing also to *New*

*Hampshire Insurance Company v. Dagnone*, 394 F. Supp. 2d 480, 486 (D.R.I.

2005)("New York law forecloses any coverage if a plaintiff is in breach of a lay up

warranty at the time of the accident, irrespective of the relationship between the

breach and the damage.")

31. *Gamez v. Ace American Ins. Co.*, 638 Fed. App'x 850, 855 (11th Cir.

2016), involved a theft of a boat and trailer. Misrepresentations in the application

were found to vitiate coverage even under Florida law because the

misrepresentations were material to the loss. Citing also, *AXA Global Risks (UK),*

*Ltd. v. Webb*, 2000 WL 33179617 (M.D. Fla., July 28, 2000) (A "laid up" warranty

in the application was breached when insured vessel sank while docked in the water;

the court held the breach increased the hazard and was material to the risk, so there

was no coverage). Thus, while New York law should apply to the interpretation of

the Hurricane warranty here, even under Florida law, there was a breach of warranty

by Prestige material to the risk. Such breach vitiates coverage.

17

32.     In sum, the parties chose the law to be applied to the insurance contract. In the absence of an entrenched federal rule of admiralty, New York law is to be applied.  Under New York law, breach of an express warranty by the assured vitiates coverage, even if the breach is not causative of the loss.  But here, Prestige's breach of the Hurricane Plan obviously increased the loss of the vessel such that coverage is void *ab initio*.

**B.     The Hurricane Plan Here Was A Warranty That Was Breached.**

33.     The leading case on interpretation of a Hurricane Plan is *Kephart v. Certain Underwriters at Lloyds of London*, 427 F. Supp. 3d 508, 515 (S.D.N.Y. 2019).  *Kephart* involved a breach of a hurricane plan by which a vessel was ashore but was not properly tied down in anticipation of the storm.  Kephart insisted that because the vessel was "hauled out" of the water before the storm, he had complied with the Hurricane Plan, even though it was not tied down as required by the hurricane plan.  The court rejected that argument, finding that strict compliance was required.

> "Kephart's argument that the haul out provision in Section 7 governs this dispute and creates ambiguity is rejected . . .because Kephart breached the unambiguous terms of the HPP [Hurricane Plan], a warranty that must be strictly complied with under maritime insurance law, he is not entitled to coverage under the policy for damage incurred on or around September 10, 2017.

*Kephart v. Certain Underwriters*, at 517.

18

34.   *Kephart v. Certain Underwriters* is illustrative for demonstrating that a Hurricane Plan is a warranty; a Hurricane Plan must be strictly complied with, and failure to strictly comply with the Hurricane Plan vitiates coverage.  In short, the Hurricane Plan in the Prestige Policy is also a warranty that must be strictly complied with; its breach requires a declaration that the policy is void *ab initio*.

35.   This is particularly applicable to this case, since Prestige's Hurricane Plan required that the vessel be "stored ashore," "at the Pensacola Shipyard or Bahia Mar Marina" "and prepped for the storm."  But the undisputed summary judgment evidence establishes the LEGAL LIMITS was afloat at its regular place of mooring. Clearly, Prestige did not comply with Part "A" of the Hurricane Plan.  Likewise, the evidence shows Prestige did not "drive the vessel a safe distance away," nor store it at a marina, nor take it to Bon Secour, in violation of Part "B" of the Hurricane Plan.

36.   For example, Prestige acknowledged the M/V LEGAL LIMITS was not stored ashore at the Pensacola Shipyard or the Bahia Mar Marina before Hurricane Sally struck the Pensacola area.  It remained at the Palafox Marina.[3]  Furthermore,

---

[3] See, Prestige's Responses to Plaintiff's Interrogatories.
**Interrogatory No. 1:**  Identify and explain in detail all steps you took to comply with the HPP for the LEGAL LIMITS in advance of Hurricane Sally.
**Response:**  . . . Not only did Lance attempt to contact Pensacola Shipyard multiple times to try to haul the vessel out of the water, but by the time Pensacola Shipyard refused to haul the vessel out, it became clear that the vessel could not be safely moved anywhere due to the strengthening winds and dangerous conditions . . . because of the deteriorating conditions, Captain Lance made the determination that the vessel could not be safely moved from Pensacola Palafox.

it was not on a list to be pulled 48 hours before the storm approached land, as also

required by the Hurricane Plan warranty.[4]

---

[4] EX A, Deposition Testimony of Captain Joseph Lance Powers, May 24, 2021 at pg. 48, ln. 18-24; pg. 49, ln. 8-22; pg. 50, ln. 3-12 and ln. 20-25; pg. 51, ln. 1-4 and ln. 13-25; and pg. 52, ln. 1-3.

> Q:    And, in fact, on September 12th, this is, like, at 3:27 p.m., Marina Management sent an email, correct?
> A:    Yes, sir.
> Q:    And the subject of it is Tropical Storm Sally?
> A:    Yes, sir.
>        * * *
> Q:    It says, "We should be prepared for at least tropical storm conditions and possibly hurricane-force winds."
> A:    Yes, sir.
> Q:    And you received this email on September 12th?
> A:    Yes, sir.
> Q:    *And you did not take any actions to prepare for at least tropical storm conditions at the time?*
> A:    *No, sir.*
> Q:    *You agree with me?*
> A:    *Yes, sir.*
>        * * *
> Q:    Now, at the bottom paragraph, it says, "For those of you on a hurricane haul-out list at one of the boatyards, it is our understanding they are taking reservations for voluntary haul-outs over the next couple of days."
>        *To my understanding, you took no action to arrange for a haul-out of the LEGAL LIMITS, correct?*
> A:    *That is correct.*
>        * * *
> Q:    . . . there's an email also with the subject header of "Tropical Storm Sally" dated September 14th at 10:13 a.m., is that right?
> A:    Yes, sir.
>        * * *
> Q:    "we are currently under a tropical storm warning, flash flood watch, and coastal flood advisory."  Is that right?
> A:    Yes, sir.
>        * * *
> Q:    Do you know whether you saw the updated track before or after this email?
> A:    10:13, yes, I'd seen the new forecasted track.
> Q:    Okay, and then you would've gotten this email?
> A:    Yes, sir.  I—I do not know what time I opened the email.
> Q:    *Okay.  And at that point, that's when you started reaching out to Pensacola Shipyard about the haul-out?*

37.     The Hurricane Plan required that Prestige store the M/V LEGAL LIMITS <u>ashore</u> at the Pensacola Shipyard or Bahia Mar Marina "<u>in the event of a tropical storm.</u>" [emphasis added].  If the vessel could not have been stored ashore at the marinas outlined above, it was to be driven a safe distance away and stored at a marina.  None of this was done by Prestige despite their assurances to the contrary.  While Prestige argues there was a question of when the vessel was in the direct path of Hurricane Sally, there was never a question that it would be subject to *tropical storm conditions.*

38.     As indicated, Captain Joseph Lance Powers, in charge of the M/V LEGAL LIMITS, knew on Saturday, September 12, 2020, that "we should be prepared for at least tropical storm conditions." [Marina Management email sent at 3:27 p.m. on September 12, 2020].  Yet, Captain Powers admits he did nothing at the time:

Q:     And you received this email on September 12th?

A:     Yes, sir.

Q:     And you did not take any action to prepare for at least tropical storm conditions at the time?

A:     No, sir.

Q:     You agree with me?

A:     *Yes, sir.*

A:     Yes, sir.[5]

39.     Prestige had an obligation to comply with the Hurricane Plan in the face of tropical storm conditions, which later became Hurricane Sally.  If Prestige had made more serious attempts at getting the vessel to Pensacola Shipyard for haul-out, it would have indeed been hauled out.[6]  At the very least, the vessel could have been navigated to a safe harbor and anchored.  Instead, Captain Powers did <u>nothing</u> in response to the tropical storm warnings he received on September 12, 2020.  He had

---

[5] See also, Exhibit E attached, Weather Data/Advisories from the National Hurricane Center.

[6] See, Deposition Testimony of Tammy Blackwell, Corporate Representative of FDC Holdings, Inc. d/b/a Pensacola Shipyard, May 25, 2021, at pg. 16, ln. 4-14; pg. 18, ln. 18-22; pg. 20, ln. 21-25; pg. 21, ln. 1-2 and ln. 8-11.

    Q:    . . . if a member of the public at large had called from September 12th to September 16th . . . and they said they wanted to be hauled out, then that was available to them.

    A:    The 14th should have been available to them.

          * * *

    Q:    Do you know when you-all stopped hauling vessels out for Hurricane Sally?

    A:    It was Monday, the 14th.

    Q:    Okay.  And do you know what time that was?

    A:    Our last haul was at 3:00 p.m.

          * * *

    Q:    And can you give me an idea of how many vessels navigated to Pensacola Shipyard to be hauled out?  . . . on the 14th?

    A:    Three.

          * * *

    Q:    Well, if you have it, how many got hauled out on Sunday, since y'all worked on Sunday?

    A:    Six.

          * * *

    Q:    And if somebody was five or six miles away, and it would take them an hour to get there, they—you know, it might take them—they may have had to call earlier than 12:00.

    A:    That is correct.

an obligation on behalf of Prestige to take some action on that day, the following day on Sunday, September 13, 2020, and throughout Monday, September 14, 2020. But he took <u>no</u> action to protect the M/V LEGAL LIMITS in connection with Prestige's Hurricane Plan.

40.    If Prestige had made some effort to get the M/V LEGAL LIMITS hauled out by Pensacola Shipyard as required in the Hurricane Plan, it would not have been damaged.[7]   Furthermore, Captain Powers admitted that a mandatory evacuation by the marina where the M/V LEGAL LIMITS was docked was not required to trigger the Hurricane Plan:

> Q:    Is a mandatory marina evacuation required to trigger the Hurricane Plan to your understanding?
>
> A:    No, sir.[8]

41.    The Hurricane Plan warranty does not say, "make best efforts to comply" or words to that effect.  Rather, the Hurricane Plan warranty is to be strictly construed under New York law, and it must be complied with under all

---

[7] See, Deposition Testimony of Tammy Blackwell of Pensacola Shipyard, May 25, 2021, pg. 27, ln. 20-22; and pg. 28, ln. 1-7:

> Q:    I'm trying to get an idea if any damage actually happened to one of the vessels that was—while it was ashore.
>
> A:    Are you asking for vessels we hauled out for Hurricane Sally or vessels that were on the yard already?
>
> Q:    Well, let's start with those you hauled out specifically for Hurricane Sally.
>
> A:    *So if memory serves me correctly, the answer is no.*

[8] Testimony of Captain Joseph Lance Powers, May 24, 2021, pg. 54, lns. 18-23.

23

circumstances.  More importantly, Prestige <u>wrote</u> the Hurricane Plan and submitted it for Great Lakes to accept and agree to bind the insurance.  Because Prestige wrote the Hurricane Plan, such language is to be construed strictly against them, and as stated, they must strictly comply.  Great Lakes relied upon Prestige's commitment that they would comply with the Hurricane Plan or Great Lakes would not have agreed to issue the Policy.[9]  New York law requires that this Court find that such Hurricane Plan warranty was breached, and that such breach, though not having to be material to the risk, was *indeed* material to the risk and the loss.  If Prestige had complied with the Hurricane Plan as written and the M/V LEGAL LIMITS had been "hauled out" by Pensacola Shipyard, it would not have been damaged by Hurricane Sally.  In sum, this breach of the Hurricane Plan warranty here vitiates coverage and this Court must, as a matter of law, declare that the Policy is void *ab initio*.

## C.   <u>No Breach of Contract or Bad Faith Exists</u>

42.   Prestige has counter-claimed against Great Lakes for breach of contract and bad faith.  This Court must grant summary judgment for Great Lakes on these causes of action as well.  There are no fact issues for consideration.

43.   First, as emphasized throughout, New York law applies.  Prestige has alleged breach of contract and bad faith under Florida law.  But Florida law simply

---

[9] See Declaration of Beric Anthony Usher, attached as Exhibit "D."

does not apply to an interpretation of the duties owed, if any, under this policy of marine insurance.

44.     Second, because there is no coverage under the Policy, it is axiomatic there can be no breach of contract or bad faith.  Further, even if the coverage issue is subject to serious debate, there can be no bad faith as a matter of law.  *Pozzi Window Co. v. Auto-Owners Ins.*, 446 F.3d 1178, 1179 (11th Cir. 2006) (affirming a U.S. Magistrate's decision where he granted judgment notwithstanding the verdict, in favor of an insurer where, "the coverage issue was and is subject to serious debate." *Id.*, at 1189). (See also, *316, Inc. v. Maryland Casualty Company*, 625 F. Supp. 1187 (N.D. Fla. 2008), which held that liability must become reasonably clear before an insurer has a duty to pay).

45.     In sum, because New York law applies, there can be no successful allegation of breach of contract and bad faith under Florida law.  However, even under Florida law, the coverage issue has clearly been hotly debated so bad faith cannot exist as a matter of law.

## VII.
## CONCLUSION

46.     Part of the important insurance coverages under the Policy relate to the Hurricane Plan which was written by Prestige.  Great Lakes accepted the Hurricane Plan as prepared by Prestige, and assumed it would be followed as written.  It

constitutes a warranty in the policy.  As specifically provided for, not only was the Hurricane Plan a warranty, but the warranty is part of the Application and the Policy.

47.    New York law applies since this is a marine insurance policy, and the choice of law should be honored.  Assuming there is no entrenched federal precedent that would apply to the interpretation of the Hurricane Plan, the New York choice of law clause is to be enforced given Great Lakes' substantial relationship with New York.  Under New York law, a warranty in a marine insurance policy must be strictly complied with, and a breach voids coverage even if that breach was not material to the risk.  But here, Prestige's breach of the Hurricane Plan was clearly material to the risk of the loss.  This Court should find as a matter of law that the Policy is void *ab initio*, and Prestige is not entitled to coverage under the Policy.  Further, there is no breach of contract or bad faith by Great Lakes as a matter of law.  Summary judgment for Great Lakes must be granted.

Dated:        August 9, 2021.

Respectfully submitted,

LUGENBUHL, WHEATON, PECK, RANKIN &
    HUBBARD, A LAW CORPORATION

By:    */s/ Todd G. Crawford*
       Todd G. Crawford (MBN 102620)
       tcrawford@lawla.com
       2501 14th Street, Suite 202
       Gulf Port, Mississippi 39501
       PH:   (228) 206-0033
       FAX: (504) 310-9195

26

ATTORNEYS FOR PLAINTIFF, GREAT
LAKES INSURANCE, S.E.

## CERTIFICATE OF COMPLIANCE

In compliance with Local Rule 7.1(F), I hereby certify that the foregoing Memorandum in Support of Plaintiff's Motion for Summary Judgment contains a total of 6629 words, inclusive of all allowable exclusions.

*/s/ Todd G. Crawford*
Todd G. Crawford

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Memorandum was served on all counsel of record via the Court's CM/ECF filing system on this the 9th day of August, 2021.

*/s/ Todd G. Crawford*
Todd G. Crawford