UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| GREAT LAKES INSURANCE, S.E., | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| vs. | § | Civil Action No. 3:20-05954-RV-HTC |
| | § | |
| PRESTIGE WORLDWIDE | § | |
| PENSACOLA CHARTERS LLC | § | |
| d/b/a LEGAL LIMITS OUTDOORS, | § | |
| | § | |
| *Defendant* | § | |

**REPLY OF GREAT LAKES INSURANCE, S.E.'S TO RESPONSE OF
PRESTIGE WORLDWIDE PENSACOLA CHARTERS, LLC D/B/A
LEGAL LIMITS OUTDOORS TO THE MOTION FOR SUMMARY
JUDGMENT OF GREAT LAKES INSURANCE, S.E.**

# TABLE OF CONTENTS

<div align="right">**Page**</div>

**TABLE OF CONTENTS** ...........................................................................................i

**TABLE OF AUTHORITIES** ...............................................................................ii-iii

**I.   SUMMARY OF ARGUMENT**......................................................................1

**II.  APPLICABLE LAW** .....................................................................................3

    **A. New York Law Does Apply And Under New York Law, The Hurricane Questionnaire Plan Was A Warranty That Must Be Strictly Complied With Or The Breach Of Same Voids Coverage** .....3

    **B. Even If Florida Law Applies, Prestige Increased The Hazard And Risk** ................................................................................................................7

    **C..Even If Federal Maritime Law Applies, The Hurricane Questionnaire Plan Must Be Strictly Construed And Such Failure To Comply With Same Is A Breach Of Warranty That Voids Coverage** ........................9

    **D. There Is No Ambiguity – the Hurricane Questionnaire Plan Was Triggered, at the latest, by the Tropical Storm Warning For the Pensacola Area At 8:00 a.m. On Sunday, September 13th**.................10

    **E. The Seawall Reference At Palafox Is Another "Red Herring"**..........11

**III. CONCLUSION** ............................................................................................11

**CERTIFICATE OF COMPLIANCE** ..................................................................14

**CERTIFICATE OF SERVICE** ..........................................................................14

<div align="center">i</div>

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Accord Hawkspere Shipping Co. Ltd. v. Intamex, S.A.,* 330 F.3d 225 (4th Cir.2003)
...............................................................................................................................4

*Burklow and Associates, Inc. v. Belcher*, 719 So.2d 31 (Fla. 4th DCA 1998)...........6

*Chan v. Society Expeditions, Inc.,* 123 F.3d 1287 (9th Cir.1997) .............................4

*Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236 (5th
Cir. 2009) ...........................................................................................................4, 5

*Great Lakes Reinsurance (UK) PLC v. Rosin*, 257 F. Supp. 2d 1244 (S.D. Fla.
2010) ...................................................................................................................4, 5

*Kephart v. Certain Underwriters at Lloyd's of London*, 427 F. Supp. 3d 508
(S.D.N.Y. 2019).................................................................................................7, 12

*Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364 (11th Cir. 1988)..................9

*Milanovich v. Costa Crociere, S.p.A.*, 954 F.2d 763 (D.C.Cir.1992)........................4

*Neely v. Club Med Management Services, Inc.,* 63 F.3d 166 (3rd Cir.1995) *(en
banc)*....................................................................................................................*4*

*Pozzi Window Co. v. Auto-Owners Ins.*, 446 F.3d 1178 (11th Cir. 2006)...............13

*RMI Holdings v. Aspen American Insurance Company*, 2020 WL 6749042 (N.D.
Fla. July 15, 2020) ...............................................................................................5

*Stewart Cay Marina v. M/V SPECIAL DELIVERY, et al,* 510 F. Supp. 2d 1063
(S.D. Fla. 2007)....................................................................................................6

*Stoot v. Fluor Drilling Services, Inc.*, 851 F.2d 1514 (5th Cir. 1988)........................4

*Travelers Prop. Cas. Co. of Am. V. Ocean Reef Charters, LLC*, 996 F.3d 1161 (11th Cir. 2021) .............................................................................................................9

## **Other Statutes**

Fla. Stat. Sec. 327.59...................................................................................................6

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| GREAT LAKES INSURANCE, S.E., | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| vs. | § | Civil Action No. 3:20-05954-RV-HTC |
| | § | |
| PRESTIGE WORLDWIDE | § | |
| PENSACOLA CHARTERS LLC | § | |
| d/b/a LEGAL LIMITS OUTDOORS, | § | |
| | § | |
| *Defendant* | § | |

**REPLY OF GREAT LAKES INSURANCE, S.E.'S TO RESPONSE OF
PRESTIGE WORLDWIDE PENSACOLA CHARTERS, LLC D/B/A
LEGAL LIMITS OUTDOORS TO THE MOTION FOR SUMMARY
JUDGMENT OF GREAT LAKES INSURANCE, S.E.**

GREAT LAKES INSURANCE, S.E. ("Great Lakes") files this Reply to the
Response of Defendant PRESTIGE WORLDWIDE PENSACOLA CHARTERS
LLC d/b/a LEGAL LIMITS OUTDOORS ("Prestige") to the Motion for Summary
Judgment of Great Lakes.

**I.
SUMMARY OF ARGUMENT**

Prestige argues that the Hurricane Questionnaire Plan was not triggered until
Monday, September 14, 2020.  This is just not so.    The Hurricane Questionnaire

1

Plan is triggered by a "storm warning.".   Prestige's arguments about the location of the tropical storm warning are immaterial because a tropical storm warning was issued for Pensacola  at 8:00 a.m. on Sunday, September 13, 2020.[1]  Nevertheless, Prestige failed to do anything on that day to comply with either Plan A or Plan B of its Hurricane Questionnaire Plan.

Prestige submitted its Hurricane Questionnaire Plan to Great Lakes with full knowledge that Great Lakes would expect compliance and to entice Great Lakes to issue the subject policy for the M/V LEGAL LIMITS.  Hurricane Plan A required that,

> "*In the event of a tropical storm or hurricane* the vessel will be stored ashore at the Pensacola shipyard or BahiaMar Marina and prepped for the storm.  The vessel will be on the list to [be] pulled 48hrs before the storm approaches land."

Hurricane Plan B required that,

> "*In the event that the vessel is unable to be stored ashore in the marinas above in plan A* the vessel will be driven a safe distance away and stored at a marina or the vessel will be taken to Bon Secour and anchored in a safe location with multiple anchors along with being tied up to pilings to ride out the storm."

This is not a question of steering currents, slow movements or volatile forecasts as Prestige postulates.  There was a tropical storm warning for the Pensacola area at 8:00 a.m. on Sunday, September 13th.  Under the plain language

---

[1] R. Doc. 31-6.

of the Hurricane Questionnaire Plan, Prestige needed to take action.  Its failure to act is a breach of warranty that voids coverage.

The Hurricane Questionnaire Plan was not ambiguous.  While Prestige seemingly argues that the Hurricane Questionnaire Plan fails to specify the precise location of a "storm warning" that would trigger its application, that is simply not material in the context of the current facts.  Here, a tropical "storm warning" was issued for Pensacola.   When a storm warning issued for the area where the vessel is located—in this case Pensacola—then the Hurricane Questionnaire Plan is indeed triggered, and Prestige is required to comply with the plan that it drafted.  In fact, Prestige does not deny that it failed to comply with the Hurricane Questionnaire Plan; it simply tries to offer excuses for that failure.  But its explanations do not "excuse" its breach of an express warranty in the policy.

## II.
## APPLICABLE LAW

## A. <u>New York Law Does Apply And Under New York Law, The Hurricane Questionnaire Plan Was A Warranty That Must Be Strictly Complied With Or The Breach Of Same Voids Coverage</u>

Prestige argues that New York law does not apply, primarily because it contends Florida has more contacts with respect to the overall transaction.  Prestige's argument emphasizes contacts in Florida and tries to downplay the significance of the choice of law provision in the policy.  The general rule is that a choice of law provision will be enforced unless the state in question "has no substantial

3

relationship to the parties or the transaction or the state's law conflicts with the fundamental purpose of maritime law."[2]  Prestige cannot carry this burden because Great Lakes first applied to be a surplus lines carrier in New York, maintains bank accounts in New York, and accepts service of process through attorneys in New York; moreover, Great Lakes is a wholly owned subsidiary of Munich Re, which owns American Re, and the offices of both insurance companies are in New York.[3] Similarly, the Fifth Circuit has held that a "choice of law provision in a maritime insurance contract will be upheld in the absence of evidence that its enforcement would be unreasonable or unjust." *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.,* 585 F.3d 236, 242 (5th Cir.2009).

*Great Lakes Reinsurance (UK) PLC v. Rosin*, 257 F. Supp. 2d 1244, 1251 (S.D. Fla. 2010), is directly on point.  It involved the exact same choice of law provision as found in the case at bar.  The insured in that case likewise argued that New York law should not apply because he was a Florida resident; the vessel was docked in Florida, and the policy was issued pursuant to Florida's surplus lines

---

[2] *Great Lakes Reinsurance (UK), PLC v. Rosin,* 757 F. Supp. 2d 1244, 1251 (S.D. Fla. 2010), citing *Stoot v. Fluor Drilling Services, Inc.,* 851 F.2d 1514, 1517 (5th Cir.1988); *Accord Hawkspere Shipping Co. Ltd. v. Intamex, S.A.,* 330 F.3d 225, 233 (4th Cir.2003); *Chan v. Society Expeditions, Inc.,* 123 F.3d 1287, 1297 (9th Cir.1997); *Neely v. Club Med Management Services, Inc.,* 63 F.3d 166, 197 n. 36 (3rd Cir.1995) *(en banc)*; *Milanovich v. Costa Crociere, S.p.A.,* 954 F.2d 763, 766–68 (D.C.Cir.1992).

[3] These are the same factors in the case at bar.  See, R. Doc. 31-5, Declaration of Anthony Usher.

4

laws.[4]  However, the court in *Rosin* found that New York has a sufficient substantial relationship with Great Lakes to allow application of New York law.  These factors included that Great Lakes first applied to be a surplus lines carrier in New York; Great Lakes maintains bank accounts in New York; Great Lakes accepts service of process through attorneys in New York, as reflected in the Policy in *Rosin* (and is reflected in this Policy); and Great Lakes is a wholly owned subsidiary of Munich Re, which owns American Re, and the offices of both insurance companies are in New York.[5]

*Rosin* found that the application of New York law to that marine insurance contract dispute was not unreasonable or unjust.  Likewise, *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009), found the same clause also was not unreasonable or unjust and applied New York law.

Prestige cites *RMI Holdings v. Aspen American Insurance Company,* 2021 WL 2980528 (11th Cir. 2021), in support of its argument that Florida law should apply under the Restatement (Second) Conflict of Law's "most significant relationship" test.  But that case simply does not apply because the policy involved in *RMI Holdings* did not contain a choice of law provision.  Here, the application of

---

[4] In fact, the court in *Rosin* found that Great Lakes insured approximately 4,000 of the 8,000 vessels in Florida.  *Rosin*, at 1249.

[5] These are the same factors in the case at bar.  See, R. Doc. 31-5, Declaration of Anthony Usher.

the choice of law provision adopting New York law is not unreasonable, not unjust, and should be enforced by this Court.

Likewise, the case of *Burklow and Associates, Inc. v. Belcher*, 719 So.2d 31 (Fla. 4th DCA 1998), also cited by Prestige, does not apply because it did not involve a marine insurance policy. Rather, it turned on the interpretation of a Florida statute that prevents *a marina* from requiring a boat owner to move a vessel after the issuance of a hurricane watch or warning; it has no application to an insurance policy. While the *Burklow* court determined that F.S.A. Section 327.59 was not pre-empted by federal maritime law, such relates solely to a <u>tort defense</u>.[6]  As the court stated in *Stewart Cay Marina v. M/V SPECIAL DELIVERY, et al,* 510 F. Supp. 2d 1063, 1070 (S.D. Fla. 2007),

> …accordingly, a negligence claim premised solely on the breach of the duty to remove a boat, must fail as there could be no duty to breach … [however], the court also recognized that federal admiralty case law "supports the imposition of the duty on a vessel owner to take reasonable care for the protection of another's property, which may, in certain circumstances, include  moving the vessel after an official storm warning has been issued."  *Id.*, at 1071.

Simply put, as noted in *Stewart Cay Marina*, *Burklow* solely relates to lawsuits *<u>by a marina</u>* for damage done *<u>to their docks</u>*.  It has nothing to do with

---

[6] Fla. Stat. Sec. 327.59 states,

"After June 1, 1994, <u>marinas</u> may not adopt, maintain, or enforce policies pertaining to evacuation of vessels which require vessels to be removed from marinas following the issuance of a hurricane watch or warning, in order to ensure that protecting the lives and safety of vessel owners is placed before interests of protecting property."

coverage under marine insurance contract between an insurer and an insured. Therefore, Prestige's argument that the application of New York law will somehow violate § 327.59 is a false premise because that statute does not apply to claims presented under insurance policies in the first place. Accordingly, there is no conflict between Florida law and New York law.

In sum, New York law applies. The *Kephart* decision is directly on point.[7] *Kephart* involved an alleged breach of the Hurricane Plan by the insured. Here, the case at bar involves an alleged breach of the Hurricane Questionnaire Plan by the insured. *Kephart* involved a situation where the insured had the vessel ashore, as required under the Hurricane Protection Plan, but failed to take other steps to comply with the Plan. Here, Prestige admits it did not comply with Hurricane Questionnaire Plan; it simply tries to excuse its failure. *Kephart* found that the failure to comply with the Hurricane Plan was a breach of warranty that voided coverage as a matter of law. Similarly, under New York law, coverage is voided for Prestige because of their breach of warranty.

## B. Even If Florida Law Applies, Prestige Increased The Hazard And Risk

Prestige misses the mark in its Response by stating that it failed to increase the hazard or risk here. In a bizarre interpretation of the policy, Prestige argues that

---

[7] *Kephart v. Certain Underwriters at Lloyd's of London*, 427 F. Supp. 3d 508, 515 (S.D.N.Y. 2019).

it had nothing to do with increasing the wind speeds of Hurricane Sally; therefore, under Prestige's reasoning, it did not increase the hazard or risk posed by Hurricane Sally.

This is a straw man argument.  Great Lakes has never argued that Prestige was personally responsible for the weather.  Rather, Prestige's admitted failure to comply with its own Hurricane Questionnaire Plan increased the hazard to the vessel posed by the Hurricane Sally.  If Prestige had moved the vessel, the risk of damage would certainly have been decreased.  Great Lakes need not prove precisely what would have happened to the vessel if Prestige had complied with the Hurricane Questionnaire Plan.  Even if it suffered damage, it would have been of a different kind and character.  The Hurricane Questionnaire Plan does not eliminate all risk of damage to the vessel, but it is certainly designed to lessen the risk.  If Prestige wanted Great Lakes to provide coverage under the assumption that it would leave its vessel at its home marina and take no action whatsoever to minimize damage from a hurricane, it could have submitted such a hurricane plan for consideration.  The policy may not have been issued at all, or the premium may have been higher.  But Prestige cannot submit a plan requiring the vessel to be evacuated, do nothing, and still expect coverage.

Similarly, the fact that other vessel owners chose not to haul out their vessels is likewise immaterial.  Great Lakes did not insure those vessels.  Those vessels did

8

not warranty that they would haul out their vessels in the event of a tropical storm or hurricane. The entire argument is a red herring.[8]  Prestige admittedly breached an express warranty under the Policy, and that breach was material to the hazard and the risk.

In sum, even if Florida law applies, it is clear that Prestige increased the hazard or risk by failing to comply with its own Hurricane Questionnaire Plan.  This failure was a breach of warranty that voids coverage.

**C.** **Even If Federal Maritime Law Applies, The Hurricane Questionnaire Plan Must Be Strictly Construed And Such Failure To Comply With Same Is A Breach Of Warranty That Voids Coverage**

There does not appear to be any federal maritime law interpreting a Hurricane Protection Plan or a Hurricane Questionnaire Plan, unlike some other warranties.[9] Should this Court find that federal maritime law applies, then it is clear that strict conformity with such warranty, namely the Hurricane Questionnaire Plan, is

---

[8] It does not matter that only 9 vessels out of 52 at Pensacola Shipyard were hauled out before Sally struck the Pensacola area.  The fact is they were hauled out before Sally struck the Pensacola area, and this demonstrates that haul out was available if Prestige had acted sooner as required under the Hurricane Questionnaire Plan.  Three (3) of those vessels hauled out were not in the Priority Program and were not damaged by Sally.  See R. Doc. 31-3, Deposition Testimony of Tammy Blackwell, pg. 27, lns. 2-5 and 13-16; pg. 28, lns. 1-7.

[9] See, *Travelers Prop. Cas. Co. of Am. V. Ocean Reef Charters, LLC*, 996 F.3d 1161 (11th Cir. 2021); see also, *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1366-67 (11th Cir. 1988), by which the breach of a navigational warranty was interpreted strictly under federal maritime law, and by which the court further found that strict conformity to such warranty was required or coverage was voided.

required.  Prestige's failure to comply with its own Hurricane Questionnaire Plan, either Plan A or Plan B, is a breach of warranty of the Policy that voids coverage.

**D.**  **There Is No Ambiguity – the Hurricane Questionnaire Plan Was Triggered, at the latest, by the Tropical Storm Warning For the Pensacola Area At 8:00 a.m. On Sunday, September 13th**

Prestige continues to argue that its own Hurricane Questionnaire Plan was somehow ambiguous.  Great Lakes previously addressed this issue in its Response to Prestige's Motion for Summary Judgment.[10]  The Hurricane Questionnaire provides that "in the event of a storm warning," the vessel will be "ashore."  Prestige prepared a written plan attached to the questionnaire, which provided that "in the event of a tropical storm or hurricane," Prestige would arrange for a "haul-out" of the M/V LEGAL LIMITS by Pensacola Shipyard or Bahia Mar Marina so the vessel could be stored ashore. Alternatively, if the vessel was unable to be stored ashore, it would be driven a safe distance away and stored at a marina or taken to Bon Secour and anchored in a safe location.

Read together, these provisions require that if there is a tropical storm or hurricane warning that could affect the vessel, Prestige would take steps to store it ashore or otherwise move it to a safe location.  There is no need for this Court to identify the precise definition of "Storm warning" because it obviously includes a tropical storm warning or hurricane warning.  As stated, a tropical storm warning

---

[10] R. Doc. 33

was issued for Pensacola no later than 8:00 a.m. on Sunday, September 13th.  This triggered the Hurricane Questionnaire Plan.  There is no ambiguity, and Prestige's argument must be rejected by this Court.

**E.**   **The Seawall Reference At Palafox Is Another "Red Herring"**

For some reason, Prestige emphasizes that the seawall at Palafox Marina may have been deficient.[11]  If anything, that argument buttresses Great Lakes' position that leaving the vessel at the marina increased the risk of damage from a hurricane.  But whether the seawall was deficient has nothing to do with Prestige's failure to comply with its Hurricane Questionnaire Plan.  Simply put, Prestige agreed it would remove the vessel from the Palafox Marina.  Since the vessel was not supposed to be at the Palafox Marina when Hurricane Sally approached, any deficiency in the seawall is immaterial to coverage under the policy.  Again, if anything, such deficiency increased the risk of damage to the vessel, thus confirming the breach of warranty was material to the risk such that coverage is void even if Florida law applies.

### III.
### CONCLUSION

One thing is undeniably clear and uncontroverted:  Captain Powers of Prestige took <u>no</u> action to comply with the Hurricane Questionnaire Plan at 8:00 a.m. on

---

[11] R. Doc. 34

11

Sunday, September 13th, when a tropical "storm warning" was issued for the Pensacola area.  If he had, Prestige likely could have complied with either Plan A or Plan B.[12]  Either plan was available to Captain Powers that day, but he chose to either ignore the 8:00 a.m. warning, or he simply missed it.  Regardless, since the Hurricane Questionnaire Plan was clearly triggered then, the failure to  comply was a violation of the warranty that voided coverage.

There is no reason for this Court not to enforce the choice of law provision in the Policy.  It is not unreasonable or unjust, and previous courts have enforced the very same provision as written. Therefore, either maritime law or New York state law apply.  Under either, the breach of the hurricane plan voids coverage.

The *Kephart* decision is directly on point.  Under the *Kephart* decision, a Hurricane Protection Plan or Hurricane Questionnaire Plan must be strictly complied with as a warranty.  Failure to comply with the warranty voids coverage.

Further, under New York law, bad faith does not exist where there is strict interpretation in a marine insurance contract.  Since New York law applies, as has been shown, then bad faith must be rejected summarily by this Court.  Further, there

---

[12] Prestige misstates testimony of Tammy Blackwell of Pensacola Shipyard.  She clearly testified that the vessels hauled out before Sally were not damaged.  See, Testimony of Tammy Blackwell, pg. 27, lns. 2-5, 3-16; pg. 28, lns. 1-7.  R. Doc. 31-3.

has been a serious debate regarding coverage, and as Great Lakes pointed out in its

Motion for Summary Judgment, that eliminates bad faith even under Florida law.[13]

In sum, New York law applies to the interpretation of Prestige's Hurricane

Questionnaire Plan.  Prestige's failure to comply with its warranty under its Policy

voids coverage.  This Court should grant Great Lakes' Motion for Summary

Judgment and deny Prestige's Motion for Summary Judgment.

Dated:  September 7, 2021.

<div style="margin-left: 40%;">

Respectfully submitted,

LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD, A LAW CORPORATION

By:   */s/  Todd G. Crawford*
Todd G. Crawford (MBN 102620)
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
2501 14th Street, Suite 202
Gulfport, Mississippi 39501
Telephone:  (228) 206-0033
E-Mail:  tcrawford@lawla.com
*Attorney for Plaintiff*

</div>

---

[13] R. Doc. 31-1, also *Pozzi Window Co. v. Auto-Owners Ins.*, 446 F.3d 1178, 1189 (11th Cir. 2006) is directly on point despite Prestige's protestations to the contrary. *Pozzi Window* involved a summary judgment on behalf of the insured assignee as to coverage, but a directed verdict for the insurer on bad faith:

> "For example, as the magistrate judge's order explained, the coverage issue was and is subject to serious debate; the evidence showed that Auto-Owners' denial of coverage was well-reasoned; there was no evidence that Auto-Owners misrepresented the terms of its policies; [and] Auto-Owners did not subject its insured to any damages beyond the denial of coverage."

## CERTIFICATE OF COMPLIANCE

In compliance with Local Rule 7.1(F), I hereby certify that the foregoing Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment contains a total of 3,113 words, inclusive of all allowable exclusions.

*/s/ Todd G. Crawford*
Todd G. Crawford


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Reply Memorandum was served on all counsel of record via the Court's CM/ECF filing system on this the 7th day of September, 2021.

*/s/ Todd G. Crawford*
Todd G. Crawford